FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ DEC 12 2011 ★

LONG ISLAND OFFICE

TM:AHT
F.#2011R02032

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

   - against -

DOMINIC CEFALU,
    also known as
    "Big D,"
JOSEPH CEFALU,
SALVATORE GERRATO,
    also known as
    "Sal," and
FRANK LONIGRO,

         Defendants.

- - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. _____
(T. 18, U.S.C., §§
892(a), 894(a)(1),
981(a)(1)(C), 1955(a),
1955(d), 1962(d), 1963,
1963(a), 1963(m), 2 and
3551 et seq.; T. 21,
U.S.C., § 853(p);
T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

<u>INTRODUCTION TO ALL COUNTS</u>

       At all times relevant to this Indictment unless otherwise indicated:

<u>The Enterprise</u>

       1.   The members and associates of the Gambino organized crime family of La Cosa Nostra constituted an "enterprise," as defined in Title 18, United States Code, Section 1961(4), that is, a group of individuals associated in fact (hereinafter the "Gambino crime family" and the "enterprise"). The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving

the objectives of the enterprise.  The Gambino crime family

engaged in, and its activities affected, interstate and foreign

commerce.  The Gambino crime family was an organized criminal

group that operated in the Eastern District of New York and

elsewhere.

2.    La Cosa Nostra operated through organized crime

families.  Five of these crime families - the Bonanno, Colombo,

Gambino, Genovese and Luchese crime families - were headquartered

in New York City, and supervised criminal activity in New York,

in other areas of the United States and, in some instances, in

other countries.  Another crime family, the Decalvacante crime

family, operated principally in New Jersey but from time to time

also in New York City.

3.    The ruling body of La Cosa Nostra, known as the

"Commission," consisted of leaders from each of the crime

families.  The Commission convened from time to time to decide

certain issues affecting all of the crime families, such as rules

governing crime family membership.

4.    The Gambino crime family had a hierarchy and

structure.  The head of the Gambino crime family was known as the

"boss."  The Gambino crime family boss was assisted by an

"underboss" and a counselor known as a "consigliere."  Together,

the boss, underboss and consigliere were the crime family's

"administration."  With the assistance of the underboss and

consigliere, the boss was responsible for, among other things, setting policy and resolving disputes within and between La Cosa Nostra crime families and other criminal groups.  The administration further supervised, supported, protected and disciplined the lower-ranking participants in the crime family. In return for their supervision and protection, the administration received part of the illegal earnings generated by the crime family.  Members of the Gambino crime family served in an "acting" rather than "official" capacity in the administration on occasion due to another administration member's incarceration or ill health, or for the purpose of seeking to insulate another administration member from law enforcement scrutiny.  Further, on occasion, the Gambino crime family was overseen by a "panel" of crime family members that did not include the boss, underboss and/or consigliere.

5.    Below the administration of the Gambino crime family were numerous "crews," also known as "regimes" and "decinas."  Each crew was headed by a "captain," also known as a "skipper," "caporegime" and "capodecina."  Each captain's crew consisted of "soldiers" and "associates."  The captain was responsible for supervising the criminal activities of his crew and providing the crew with support and protection.  In return, the captain often received a share of the crew's earnings.

3

6.    Only members of the Gambino crime family could serve as a boss, underboss, consigliere, captain or soldier. Members of the Gambino crime family were referred to on occasion as "goodfellas" or "wiseguys," or as persons who had been "straightened out" or who had their "button."  Associates were individuals who were not members of the Gambino crime family, but who nonetheless engaged in criminal activity for, and under the protection of, the Gambino crime family.

7.    Many requirements existed before an associate could become a member of the Gambino crime family.  The Commission of La Cosa Nostra from time to time limited the number of new members that could be added to a crime family.  An associate was also required to be proposed for membership by an existing crime family member.  When the crime family's administration considered the associate worthy of membership, the administration then circulated the proposed associate's name on a list given to other La Cosa Nostra crime families, which the other crime families reviewed and either approved or disapproved. Unless there was an objection to the associate's membership, the crime family then "inducted," or "straightened out," the associate as a member of the crime family in a secret ceremony. During the ceremony, the associate, among other things: swore allegiance for life to the crime family above all else, even the associate's own family; swore, on penalty of death, never to

4

reveal the crime family's existence, criminal activities and other secrets; and swore to follow all orders issued by the crime family boss, including swearing to commit murder if the boss directed it.

### Methods and Means of the Enterprise

8.     The principal purpose of the Gambino crime family was to generate money for its members and associates.  This purpose was implemented by members and associates of the Gambino crime family through various criminal activities, including drug trafficking, robbery, extortion, illegal gambling and loansharking.  The members and associates of the Gambino crime family also furthered the enterprise's criminal activities by threatening economic injury and using and threatening to use physical violence, including murder.

9.     Although the primary purpose of the Gambino crime family was to generate money for its members and associates, the members and associates at times used the resources of the Gambino crime family to settle personal grievances and vendettas, sometimes with the approval of higher-ranking members of the family.  For those purposes, members and associates of the enterprise were asked and expected to carry out, among other crimes, acts of violence, including murder and assault.

10.    The members and associates of the Gambino crime family engaged in conduct designed to prevent government

5

detection of their identities, their illegal activities and the location of proceeds of those activities.   That conduct included a commitment to murdering persons, particularly members or associates of organized crime families, who were perceived as potential witnesses against members and associates of the enterprise.

11.  Members and associates of the Gambino crime family often coordinated criminal activity with members and associates of other organized crime families.

<u>The Defendants</u>

12.  At various times, the defendant DOMINIC CEFALU, also known as "Big D," was a captain, a soldier and an associate within the Gambino crime family.

13.  At various times, the defendant JOSEPH CEFALU was an associate within the Gambino crime family.

14.  At various times, the defendant SALVATORE GERRATO, also known as "Sal," was an associate within the Gambino crime family.

15.  At various times, the defendant FRANK LONIGRO was an associate within the Gambino crime family.

6

## COUNT ONE
(Racketeering Conspiracy)

16.   The allegations in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

17.   In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, also known as "Big D," together with others, being a person employed by and associated with the Gambino crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and 1961(5), consisting of the racketeering acts set forth below.  The defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## RACKETEERING ACT ONE
(Extortionate Extension/Collection of Credit - John Doe #1)

18.   The defendant DOMINIC CEFALU agreed to the commission of the following acts, any one of which alone constitutes Racketeering Act One:

7

A.     Extortionate Extension of Credit Conspiracy

19.   In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #1, a person whose identity is known to the Grand Jury, in violation of Title 18, United States Code, Section 892(a).

B.     Extortionate Extension of Credit

20.   In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, together with others, did knowingly and intentionally make one or more extortionate extensions of credit to John Doe #1, in violation of Title 18, United States Code, Sections 892(a) and 2.

C.     Extortionate Collection of Credit Conspiracy

21.   In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit

from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1).

D.    Extortionate Collection of Credit

22.    In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1, in violation of Title 18, United States Code, Sections 894(a)(1) and 2.

RACKETEERING ACT TWO
(Illegal Gambling - Bookmaking)

23.    In or about 2006, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, specifically, New York Penal Law Sections 225.05, 225.10(1) and 20.00, which involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of such business and which remained in substantially continuous operation for a period in excess of thirty days and

9

had a gross revenue of at least $2,000 in any single day, in violation of Title 18, United States Code, Sections 1955(a) and 2.

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

COUNT TWO
(Collection of Unlawful Debt Racketeering Conspiracy)

24.   The allegations contained in paragraphs 1 through 15 are realleged and incorporated as if fully set forth in this paragraph.

25.   In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINIC CEFALU, also known as "Big D," JOSEPH CEFALU, SALVATORE GERRATO, also known as "Sal," and FRANK LONIGRO, together with others, being persons employed by and associated with the Gambino crime family, an enterprise that engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of that enterprise through the collection of unlawful debt, as that term is defined in Title 18, United States Code, Section 1961(6), to wit: (1) one or more debts that were unenforceable under New York

10

State law, specifically, New York Penal Law Section 190.40, in whole and in part as to principal and interest because of the law relating to usury and which were incurred in connection with the business of lending money and one or more things of value at a rate usurious under New York State law, where the usurious rate was at least twice the enforceable rate; and (2) one or more debts that were incurred in gambling activity that was in violation of New York State law, specifically, New York Penal Law Section 225.05, and which were incurred in connection with the business of gambling in violation of New York State law, in violation of Title 18, United States Code, Section 1962(c).

(Title 18, United States Code, Sections 1962(d), 1963 and 3551 et seq.)

<u>COUNT THREE</u>
(Extortionate Extension of Credit Conspiracy)

26.  In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINIC CEFALU, also known as "Big D," and JOSEPH CEFALU,

together with others, did knowingly and intentionally conspire to make one or more extortionate extensions of credit to John Doe #1.

(Title 18, United States Code, Section 892(a) and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FOUR</u>
(Extortionate Extension of Credit)

27.  In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINIC CEFALU, also known as "Big D," and JOSEPH CEFALU, together with others, did knowingly and intentionally make one or more extortionate extensions of credit to John Doe #1.

(Title 18, United States Code, Sections 892(a), 2 and 3551 <u>et</u> <u>seq</u>.)

<u>COUNT FIVE</u>
(Extortionate Collection of Credit Conspiracy)

28.  In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINIC CEFALU, also known as "Big D," and JOSEPH CEFALU, together with others, did knowingly and intentionally conspire to participate in the use of extortionate means to collect and

12

attempt to collect one or more extensions of credit from John Doe #1.

(Title 18, United States Code, Sections 894(a)(1) and 3551 et seq.)

### COUNT SIX
(Extortionate Collection of Credit)

29.  In or about and between August 2004 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants DOMINIC CEFALU, also known as "Big D," and JOSEPH CEFALU, together with others, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect one or more extensions of credit from John Doe #1.

(Title 18, United States Code, Sections 894(a)(1), 2 and 3551 et seq.)

### COUNT SEVEN
(Illegal Gambling - Bookmaking)

30.  In or about and between March 2006 and December 2006, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant DOMINIC CEFALU, also known as "Big D," together with others, did knowingly and intentionally conduct, finance, manage, supervise, direct and own all or part of an illegal gambling business, to wit: a gambling business involving sports betting, which operated in violation of the laws of New York State, specifically, New

York Penal Law Sections 225.05, 225.10(1) and 20.00, which
involved five or more persons who conducted, financed, managed,
supervised, directed and owned all or part of such business and
which remained in substantially continuous operation for a period
in excess of thirty days and had a gross revenue of at least
$2,000 in any single day.

      (Title 18, United States Code, Sections 1955(a), 2 and
3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS ONE AND TWO

      31.  The United States hereby gives notice to the
defendants charged in Counts One and Two that, upon conviction of
any such offense, the government will seek forfeiture in
accordance with Title 18, United States Code, Section 1963, which
requires any person convicted of such offenses to forfeit:
(a) any interest the person acquired or maintained in violation
of Title 18, United States Code, Section 1962; (b) any interest
in, security of, claims against or property or contractual right
of any kind affording a source of influence over any enterprise
which the person has established, operated, controlled, conducted
or participated in the conduct of, in violation of Title 18,
United States Code, Section 1962; and (c) any property
constituting, or derived from, any proceeds which the person
obtained, directly or indirectly, from racketeering activity or

unlawful debt collection, in violation of Title 18, United States Code, Section 1962.

32. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;
it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 1963(a) and 1963(m))

CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS THREE THROUGH SIX

33. The United States hereby gives notice to the defendants charged in Counts Three through Six that, upon conviction of any such offense, the government will seek forfeiture in accordance with: (a) Title 18, United States Code,

15

Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of any such offenses.

34. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

16

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT SEVEN

35.  The United States hereby gives notice to the defendant charged in Count Seven that, upon conviction of such offense, the government will seek forfeiture in accordance with: (a) Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offense to forfeit any property, real or personal, constituting or derived from proceeds traceable to a violation of such offense; and (b) Title 18, United States Code, Section 1955(d), which requires any person convicted of such offense to forfeit any property, including money, used in violation of Title 18, United States Code, Section 1955.

36.  If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

17

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendants up to the value of the forfeitable property described in this forfeiture allegation.

      (Title 18, United States Code, Sections 981(a)(1)(C) and 1955(d); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

18

F #2011R02032

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL  DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

*DOMINIC CEFALU, also known as "Big D,"*
*JOSEPH CEFALU, SALVATORE GERRATO, also known as*
*"Sal," and FRANK LONIGRO,*

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 892(a), 894(a)(1), 981(a)(1)(C), 1955(a), 1955(d), 1962(d), 1963, 1963(a), 1963(m), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
Foreman

Filed in open court this _____
of _____ A.D. 20 _____ day,

_____
Clerk

Bail, $ _____

_____

*Amir Toossi, Assistant United States Attorney, (718) 254-6176*