# EXHIBIT A

1

1              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF NEW YORK
2

3       -------------------------------X
        UNITED STATES OF AMERICA,
4                                    :    CR-11-824
                                          (JS)
5            -against-              :    United States Courthouse
                                          Central Islip, New York
6       DOMINIC CEFALU, JOSEPH CEFALU,
                                     :    December 21, 2011
7                    Defendants.          2:30 p.m.
        -------------------------------X
8
                        TRANSCRIPT OF ARRAIGNMENT
9                   BEFORE THE HONORABLE JOANNA SEYBERT
                    UNITED STATES DISTRICT COURT JUDGE
10

11      APPEARANCES:

12      For the Government:        LORETTA E. LYNCH, ESQ.
                                   UNITED STATES ATTORNEY
13                                   BY: AMIR TOUSSI, AUSA
                                   One Pierrepont Plaza
14                                 Brooklyn, New York 11201

15

16      For the Defendants:        ERIC FRANZ, ESQ.

17

18

19

20      Official Court Reporter:   Paul J. Lombardi, RMR, FCRR
        Ph. (631) 712-6106         100 Federal Plaza - Suite 1180
21      Fax (631) 712-6122         Central Islip, New York 11722

22

23

24                Proceedings recorded by mechanical stenography.
25                    Transcript produced by CAT.

1          What I said was --

2          THE COURT:  It was by the DEA back in 1981 and

3     he got seven years as a YO.

4          MR. TOUSSI:  And on top of that, your Honor,

5     what I was referencing was the wiretap conversation where

6     the defendant said that there were racketeering charges.

7          Now, I'll be honest, I don't have the 1981 case.

8     I haven't been able to get that information from archives,

9     but that's from the wiretap.

10          THE COURT:  What I'm interested in now,

11    Mr. Toussi, is your telling me what you have of recent

12    vintage here on this case that would lead me to believe

13    there's a relatively substantial risk that the defendant

14    is a danger to the community?

15          MR. TOUSSI:  When you say recent vintage, do you

16    mean like --

17          THE COURT:  Last year.

18          MR. TOUSSI:  Okay.

19          Your Honor, I --

20          THE COURT:  This past year.

21          MR. TOUSSI:  No, there's no information in the

22    last year.

23          My proffer is that the last incident was -- of

24    surveillance was that he attended either a wake or a

25    funeral or a wedding, but it was in 2009.

# EXHIBIT B

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA    :    11-CR-824

    -against-                US District Court
                        Central Islip, NY
DOMINIC CEFALU, JOSEPH CEFALU,
and FRANK LONIGRO,               June 28, 2013
          Defendants.:   11:45 am
- - - - - - - - - - - -- - - X

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOANNA SEYBERT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:
                    LORETTA E. LYNCH
                    United States Attorney
                    271 Cadman Plaza East
                    Brooklyn, New York 11201
                    By: AMIR TOOSSI, ESQ.
                    Assistant US Attorney

For the Defense:                 ERIC FRANZ, ESQ.
                    For Dominic Cefalu

                    MARC AGNIFILO, ESQ.
                    For Joseph Cefalu

                    MARC FERNICH, ESQ.
                    For Frank Lonigro

Court Reporter:                  Dominick M. Tursi, CM, CSR
                    US District Courthouse
                    1180 Federal Plaza
                    Central Islip, New York 11722
                    (631) 712-6108 Fax: 712-6124
                    DomTursi@email.com

Proceedings recorded by mechanical stenography.
Transcript produced by CAT.

14

1    understanding -- was that there was a time that was it was

2    one point a week which, after you extrapolate that out,

3    would be 52 percent. The legal rate is 25 percent. So

4    with that understanding, that satisfies the statute.

5                    THE COURT:  Okay.

6                    And during this two-year period you were aware

7    that this activity you engaged in was a conspiracy and

8    illegal.  Is that correct?

9                    DEFENDANT DOMINIC CEFALU:  Yes, your Honor.

10                   THE COURT:  In addition to which -- where did it

11   consider?  Physically.

12                   MR. FRANZ:  Mostly in Suffolk County.

13                   THE COURT:  Okay.  Is that correct, Mr. Cefalu?

14                   DEFENDANT DOMINIC CEFALU:  Yes, your Honor.

15                   MR. TOOSSI:  Your Honor, some of the activities

16   I can represent, based on the government's evidence, that

17   some of the activity occurred in Nassau County.

18                   THE COURT:  Is that accurate?

19                   MR. FRANZ:  Yes.  We will agree with that.

20   Basically, Long Island.

21                   As the court will learn later on, most of this

22   is in the form of conversations that occurred.

23                   THE COURT:  Tell me what it is you did.

24                   You just gave me a legal definition.  I mean,

25   you made an agreement with other individuals that you

15

1   would use force to collect a debt?  No force?

2              MR. FRANZ:  No force.

3              Judge, this is a collection of an unlawful debt

4   which only requires that the debt to be collected was

5   something is that was twice the usurious rate in New York;

6   twice the permitted rate in New York.

7              There is no element of violence whatsoever for

8   it.

9              THE COURT:  Is that the government's position?

10  That there was no threat or physical harm or anything of

11  that sort?

12             MR. TOOSSI:  In terms of the plea to what -- in

13  terms of the element of the crime that the defendant is

14  pleading guilty to, that's correct, your Honor.  He

15  doesn't have to allocute to that.  That is -- I will leave

16  it at that.

17             This is a collection of an unlawful debt, and

18  under the statute as long as the defendant was involved in

19  a --

20             THE COURT:  -- collection of a usurious loan?

21             MR. TOOSSI:  Correct, over 50 percent under New

22  York State law, then that would -- and was also associated

23  in fact with an enterprise as that term is defined by the

24  US Code, then that would be sufficient to support the

25  allocution for the, to Count Two.

# EXHIBIT C

 **LAW OFFICES OF ERIC FRANZ, P.L.L.C.**

747 Third Avenue
20th Floor
New York, New York 10017

PH: (212) 355-2200
FAX: (212) 937-2217
www.efranzlaw.com

February 20, 2014

Sr. U.S.P.O. Linda Fowle
U.S. Probation Department
202 Federal Plaza
West Wing, 2nd Floor
Central Islip, New York 11722-9012

### Re: *United States v. Dominic Cefalu, 11 Cr. 824 (JS)*

Dear Officer Fowle:

We respectfully submit the following comments and objections to the pre-sentence report ("PSR") prepared by your office in the above-referenced case:

**Throughout:** The report contains extensive language and details regarding the Gambino crime family and how it functions. However, Mr. Cefalu did not plead guilty to being a member of the Gambino crime family nor did he agree that the Gambino crime family was involved in his offense conduct. Thus, we request that the report be so modified.

Specifically, *page 3, paragraph 1* states that the defendant pleaded guilty to conspiring with others, "persons employed by and associated with the Gambino crime family." Additionally, in *paragraphs 3-9,* and *11* the report contains a detailed description of the internal operations of the Gambino crime family. Finally, *paragraphs 13, 22, 23, and 24* contain references to Mr. Cefalu's involvement with the Gambino family and/or position within the family.

We submit that the aforementioned references to the Gambino crime family and details concerning its operations should be removed or that the report be amended to reflect that Mr. Cefalu did not adopt the characterization that the he was associated with the Gambino crime family. Rather, references to the "Gambino crime family" should be replaced with "an enterprise," since Mr. Cefalu pleaded guilty to participating in an enterprise, not the Gambino crime family.

Indeed, the government conceded that was its understanding as well. During the plea hearing[1], the following colloquy took place:

---
[1] Annexed hereto at Exhibit A are the relevant portions of the transcript from the plea hearing before Judge Seybert on June 28, 2013.

MR. FRANZ:        ... The only issue I wanted to address is with regard to
                  the allocutions. Everybody is preparing to allocute that
                  they made an agreement with a group of individuals
                  that were associated in fact, which they understand by
                  law constitutes an enterprise.

THE COURT:        Correct.

MR. FRANZ:        What they don't adopt is every word that would be
                  considered to be gratuitous in the indictment that this
                  was the Gambino family. They don't adopt that
                  vernacular but they agree, and they will be able to
                  satisfy the statutory elements, that they formed an
                  association in fact which constituted an enterprise and
                  engaged in the predicate conduct which formed the
                  basis for —

THE COURT:        -- racketeering.

MR. FRANZ:        -- racketeering. That's correct.

THE COURT:        Is that your understanding?

MR. TOOSSI:       That is my understanding, your Honor.

Tr. 11-12

When the Court asked Dominic Cefalu "what it is that [he] did that makes
[him] guilty of Count Two," he responded:

DOMINIC CEFALU: Between August 2004 and December 2006, I agreed
                  with a group of people who were associated in fact to
                  collect an unlawful debt from JD1. I understand and
                  accept that this group of people constitutes *an
                  enterprise* under the law.

                  I also understand and accept that the debt I collected
                  was unlawful because the rate of interest was more than
                  twice the legal rate under New York law.

                  This conduct occurred in the Eastern District of
                  New York.

Tr. 13. (emphasis supplied).

Later in the proceeding, the government once again confirmed that its proof
would show Dominic Cefalu was in "an enterprise" but did not extend that to mean the
Gambino crime family. The following colloquy took place between the Court and
Assistant United States Attorney Toossi:

2

| | |
|---|---|
| MR. TOOSSI: | ...This is a collection of an unlawful debt, and under the statute as long as the defendant was involved in a – |
| THE COURT: | -- collection of a usurious loan? |
| MR. TOOSSI: | Correct, over 50 percent under New York State law, then that would—and was also associated in fact with an enterprise as that term is defined by the US Code, then that would be sufficient to support the allocution for the, to Count Two. |
| THE COURT: | And that would be the government's proof. |
| MR. TOOSSI: | Yes, your Honor. |

Tr. 15-16.

Simply put, we submit that since Mr. Cefalu did not plead guilty to being a member of the Gambino crime family, the language in the report should be so amended.

**Page 3, paragraph 2:** The report should be amended to reflect that Mr. Cefalu's forfeiture, pursuant to his plea agreement, is in the amount of $2,500. Paragraph 1, subsection (f) of the plea agreement states: "Other penalties: Criminal forfeiture in the amount of $2,500, as set forth below, in paragraphs 5 through 11 (18 U.S.C. § 1963)."[2]

**Page 4-5, paragraph 12:** The report states that the identity of John Doe #1 was not revealed for the sake of his safety. However, it should be noted that the identity of John Doe #1 has been known to the defendants since 2006. Specifically, we draw your attention to the argument at the detention hearing[3] immediately after Mr. Cefalu was arrested:

MR. FRANZ: ...This person, Mr. No. 1, has been known to be a cooperating witness for years. He has called me. I said, I will not talk to you. Nothing has ever happened to him. Nobody has ever threatened him. Okay.

I told him, I cannot speak with you. I am not your attorney, and he would call me, I would say, I am not talking to you. And I'm not suggesting that that would be something that would render me a witness at trial. I'm letting the court know by way of proffer because the government's allowed to do so, that my clients were aware that this gentleman was telling the government a story to get out of paying a debt, and nobody ever did anything to him. Nobody ever harmed him.

Tr. 39.

---

[2] Annexed hereto at Exhibit B is the relevant portion of Mr. Cefalu's plea agreement.
[3] Annexed hereto at Exhibit C is the relevant portion of the transcript from the arraignment before Judge Seybert on December 21, 2011

3

In the event the government contests that the defendants were unaware of John Doe #1's identity, we would be happy to provide an *in camera* submission to debunk this unnecessary claim that the defendants pose any risk to John Doe #1.

**Page 5, paragraph 13; page 7, paragraph 22:** Page 5, paragraph 13 states that "[a]lthough none of the money was delivered to John Doe #1 by Dominic Cefalu, John Doe #1 understood that at least $50,000 of the money he borrowed came directly from Dominic Cefalu, and understood Cefalu's role within the Gambino family." Similarly, page 7, paragraph 22 states that "[b]etween August 2004 and December 2006, Dominic Cefalu provided at least $50,000 of the $300,000 loaned to John Doe #1 at a usurious rate of interest."

We dispute that Mr. Cefalu ever loaned any money, much less $50,000, to John Doe #1. In fact, Mr. Cefalu did not learn of the existence of the loan that his brother, Joseph Cefalu had extended until 2006. As such, we submit that Dominic Cefalu did not provide any money to John Doe #1 and was not involved in the loan in any way in the years 2004 and 2005.

**Page 7, paragraph 22:** The report states that "Dominic Cefalu directed Lonigro and Gerrato to collect payments from John Doe #1 on his behalf, and also authorized them to threaten physical harm against John Doe #1 if he did not make payments as instructed." We dispute that Dominic Cefalu ever threatened John Doe #1 or directed or authorized anyone to deliver any threats to John Doe #1.

The report also states that Mr. Cefalu "threatened to put John Doe #1 'in a coma'" if he failed to make his payments. We submit that report should be supplemented to reflect that Mr. Cefalu's statement was not made to John Doe #1, but rather to Frank Lonigro, and that Mr. Cefalu never directed or authorized Mr. Lonigro to communicate that threat to John Doe #1.

**Page 7, paragraph 24; page 10, paragraph 40:** Paragraph 24 states that "[a]s Dominic Cefalu supervised at least five individuals during the offense, an aggravating role adjustment pursuant to Guideline 3B1.1(b) is deemed warranted." Accordingly, in the Offense Level Computation section of the report at paragraph 40, 3 points are added to reflect that "the defendant supervised at least five others." We submit that Dominic Cefalu did not supervise at least five individuals with respect to the instant offense and if the government has proof of same, the report should be amended to reflect the names of those individuals who Dominic Cefalu allegedly supervised. Accordingly, we submit that three points should not be added to the Offense Level Computation.

We respectfully request that you modify the PSR to reflect this information.

We have no other objections to the report.

4

Please feel free to call me if you have any questions or if you are in need of any additional documentation or information.

Respectfully submitted,

ERIC FRANZ

5

# EXHIBIT D



ESPACE DE VIE

February 21, 2014

Honorable Judge Seybert
United States District Court
100 Federal Plaza
P.O Box 9014
Central Islip, NY 11722

Dear Judge Seybert,

Thank you for giving me the opportunity to speak on behalf of Dominic Cefalu. More importantly, for allowing me to share with you Mr. Cefalu's importance to our Company and the impact his efforts have had on many people in Canada and the United States.

When I was contemplating the purchase of Muraflex 4 years ago, I did so with one goal in mind, to make the Company the premier architectural wall manufacturer in North America. I understood that to achieve my goal I had to make an immediate and big impact on the US market. To do that I had to start at the top, NYC. The problem we faced was who would head up this arduous task.

I made numerous inquiries to my contacts in the construction industry, asking who they would recommend to handle such an important role. Surprisingly, the one name that continued to surface was Mr. Cefalu's. I contacted Mr. Cefalu and after numerous discussions convinced him to join our team. Dominic hit the ground running, assisting in bringing new business opportunities to the table. In the past 4 years Mr. Cefalu's direct efforts have helped take the company from $3 million to $25 million in gross sales.  This past November he made the final presentation on a project in Boston, Mass called Manulife (a division of John Hancock) which awarded us this $3.1 million project. His knowledge of the industry is surpassed by none and he is considered the number one expert in the architectural wall industry.

Further, he is solely responsible for training our Dealers, Representatives and the installation teams around the Country. He is our face in the US, meeting with company executives from the major architectural and construction firms throughout the country. In the past 4 years the feedback is consistently the same. Dominic Cefalu is the ultimate professional. He treats everyone he meets with respect and dignity and his greatest attributes are his integrity and honesty.

His dedication and hard work speaks for itself. He travels to every major city in the US and is on the road 5 days a week running and maintaining our US operations. From Boston to Florida,

Philadelphia and Washington DC, Chicago and Houston, to Seattle and Los Angeles, Dominic Cefalu manages it all with confidence expertise and success.

Mr. Cefalu is directly and physically involved with all our open projects, specifically 2 active and overlapping projects, (HMA) Hyundai Motors of America in Fountain Valley, CA and (AAMC) Association of American Medical Colleges in Washington, DC. Both are extremely large, high profile projects that require high level management and expertise. HMA is expected to complete by mid-April and AAMC begins February 1 and will run through July. Falling in the middle of both is the 2nd phase of Manulife. He recently managed the 1st phase to a successful completion. The client has made it quite clear to us that they expect his presence on the remaining phases.

I believe the above clearly states how important Mr. Cefalu is to our Company but there is much more to him than his professional life. Over the past 4 years we have become great friends. His fine character is evident in his daily life. His love and commitment to his wife Gerry and their 4 children is the most important thing to him. Everything he does is with their best interest in mind. His children are evidence to Dominic's fine parenting, becoming positive members of society.

What does this all mean? Well, on a personal note I do not want to see my friend incarcerated. And of course I do not wish to see his family suffer that fate along with him. But my main responsibility must be to my company and the many employees that count on their jobs to feed their own families. So with that I implore that you not incarcerate Mr. Cefalu, because by doing so would be devastating to Muraflex and all those who rely on us to make their living. I can assure you that without Mr. Cefalu many people will lose their jobs. We will not be able to replace him, impacting our ability to operate at the high level required by our US customers. Loss of business equals loss of jobs.

It is important to note that the loss of employment for many will not be limited to Montreal. It will trickle across the border to many in the labor force throughout the US, who are benefiting from our business. I dare to say that with so many of our citizens out of work, great consideration should be taken in making the important decision before you. My great hope is that you will see that society is better served by keeping Mr. Cefalu working for us here at Muraflex. My hope is that you will find a way to apply justice while still allowing us to maintain the health of our Company and to continue to play an important role in improving the economy of both Countries.

Once again, I thank you for allowing me to speak on behalf of Mr. Cefalu and Muraflex. I am available anytime, day or night if I can be of further assistance.

Respectfully,

Fernando Petreccia
President, CEO

# EXHIBIT E



February 19, 2011

Dear Fernando,

I am writing to you with regard to the project management done by Mr. Dominic Cefalu. I had the opportunity to meet Dominic prior to the beginning of the Astral Media project and was confident that he had the skills and experience to deal with this rather demanding client.

Well, I can now say that our mutual client Astral was very happy with the performance and execution of the project. If it were not for Dominic's expertise and client networking skills this could have been a real problem. On the first phase of this project last year, we have a lot of difficulty with the execution, so Cime was really under the gun to prove to Astral that things can indeed be better.

If you can pass on our thanks to Dominic, everyone at Cime is so pleased that this installation went according to plan and even a little better.

We would be happy to work with Muraflex in the near future and hope that Dominic can manage them as well.

Best Regards,

Stephen Tabah
Cime Environnement D'Affaire
Monteal, Quebec

# EXHIBIT F



**TISHMAN**
An AECOM Company

Julie Geden
Sr. Project Manager
Tishman Construction
New York, NY

December 19, 2012

To the Muraflex team,

Dominic Cefalu has worked with me on several projects in the past couple of years. In the time I have known him I can state, with extreme certainty and confidence, that he has done what has been asked of him and beyond. He has handled himself with great professionalism and integrity in all the time that I have known him.

The great testament to his good work has been the stream of great projects that Muraflex has been able to complete with Tishman. Dominic is often requested by our clients specifically to be in charge and represent Muraflex.

Dominic is an important part of our execution team and his good work has contributed to Muraflex being specified over and over with our clients.

Please give our best to Dominic and all of your team in Montreal.

Best Regards,

Julie Geden
Tishman Construction

# EXHIBIT G



September 8, 2012

Dear Fernando,

Dominic Cefalu came through with all the challenges that we faced in DC on the McDermott, Will, Emery project. With all the changes of installers, site delays, we were facing near disaster on this job. When you finally sent Dominic on site to meet with the end user, the General Contractor, and the building owner then good things started to happen.

As you can imagine, on a multimillion dollar project we could not afford to disappoint the designers and architects, not to mention the client. We were in danger of ruining our reputation in DC until Dominic put together a plan to address all the issues the different intervenants were facing. This could have been a disaster. Unfortunately, we were faced with chargebacks for poor performance when we started, but Dominic was able to put an end to those charges as we began to improve on our deliverables.

Thank you for sending Dominic on site and to stick with it until the end. In the last phase, 3rd floor, I can tell you it was deficiency free! He turned things around in a way that is very important for a large market like DC.

Kind Regards,

Jorge Garayta
Owner
Garayta Group

# EXHIBIT H

June 17,2014

Dear Honorable Judge Seybert,


  We would like to tell you about the Dominic Cefalu we know.  We do not know of his past or what he is charged with, as far as we are concerned his past is his past and we do not need nor want to know of it.  What we can tell you about is the person we met roughly five years ago thru a mutual friend.  Dominic and his family have become part of our family dynamic as much as we have become part of theirs.
  From day one Dominic has shown family values that you do not see anymore.   He has a very loving wife and four of the most respectful children one can ask for. He always puts his wife and children's needs above his own.  Very involved in his children's lives and always-giving guidance when asked and needed.  He is an extremely dedicated father and husband.
  When Dominic first met our son he was eight years old.  Dominic would sit for hours talking about anything my son had an interest in. We would be sitting at the table and I would tell my son to go watch TV and Dominic would always say "no let him sit here so we can talk". To this day this continues and he will engage in conversations from politics to history and anything in between. He has taught him many lessons along the way and most of all taught him to keep an open mind and not be to quick to judge someone.  Our son has such a relationship with Dominic now that he asked Dominic to be his sponsor for his Confirmation.
  Dominic is the type of guy that drops whatever he is doing if you need a hand with anything.  If he calls you and asks what you are up to and you tell him you are helping a friend or a neighbor with something the next question is, where are you? I'm on my way.  The Dominic we know is a Hard working, family oriented all around good person.  He is the backbone of his family and has touched our family's hearts in many ways.  Please take this into consideration and see the person that we see today.



                    Sincerely,
                     Michael and Laura DeBlasi

Attached please see a letter our son wrote about Dominic in school this past year.

# EXHIBIT I

important person  2/14/13

Somebody very important in my life
is my Uncle Dom. He always gives
me good advice and I have learned
alot from him. When ever I go to
his house I have the best
food, hear the best stories. He always
lets me help him around the
house. If I say I want something
he will go and get for me like
when he drove to long island to
get me a deerhead. I would do
anything for him and I know he
would do anything for me. That's
why my uncle Dom's a important
person in my life. I love my
uncle Dom.

# EXHIBIT J



**KNIGHTS of YORK**

November 25, 2013

The Honorable Judge Seybert
C/o Eric Franz
Law Offices of Eric Franz P.L.L.C.
747 Third Avenue
20th Floor
New York, NY 10017

Re: Dominic Cefalu

EXECUTIVE BOARD

THOMAS J. PETERSEN
PRESIDENT

PETER RAIMONDI
FIRST VICE PRESIDENT

KEITH MIKULEWICH
SECOND VICE PRESIDENT

FRANK ASTUTO
TREASURER

KENNETH REIN
RECORDING SECRETARY

PAST PRESIDENTS

DOMENIC FERRANTE
THOMAS J. PETERSEN

Judge Seybert:

I am writing this letter to speak about my friend and colleague Dominic Cefalu. I have known Dominic since 1994. We first met on a project we were both doing at a Wall Street firm. My first impression, he was concerned about the people we were working for and his determination to do the right thing. It turns out it was much more than that.

After working together and getting to know Dominic, he was one of the first people I called when I decided to open a non-profit organization to help children. His dedication to his job and family were impressive and what I soon learned his dedication to those less fortunate was even greater. Dominic became a driving force behind the organizations success. Always the first to volunteer and the last to leave an event, his tireless dedication in the early years is what helped to build a solid foundation on which the organization operates today.

Character and leadership are the things that make Dominic different. Many people say they are going to help, the difference is he takes action. Our organization has run many events over the past 17 years and he usually is the first to call and make sure every detailed is covered.

If I had to describe him in a single word I would say, Champion. He is a champion to his family, as well as his professional life and his charitable life. Others look up to him and take guidance from him. He is the first person I call when the organization needs a helping hand.

My hope is you will see the goodness in him and allow him to continue his commitment to the children and families we serve

Sincerely,

Thomas J Petersen
President

"EVERY KNIGHT FOR THEIR TOMORROW"

110 WALL STREET, 11TH FLOOR ▪ NEW YORK, NY 10005-3817 ▪ TEL/FAX: 855-456-9692 (855-4-KOYNYC) ▪ EMAIL: INFO@KNIGHTSOFYORK.ORG

WEB: KNIGHTSOFYORK.ORG  KNIGHTSOFYORKNY  @KNIGHTSOFYORKNY